[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13076

_____

D.C. Docket No. 2:10-cv-02989-VEH

DARRIEST LIKES,
and all other similarly situated persons,

Plaintiff - Appellant,

versus

DHL EXPRESS (USA), INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 29, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and HIGGINBOTHAM,* Circuit
Judges.

---

* Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

PER CURIAM:

In this putative class action, plaintiff Darriest Likes[1] appeals the district court's entry of summary judgment in favor of DHL.  Mr. Likes alleges that DHL violated the Worker Adjustment and Retraining Notification Act ("WARN Act") by failing to provide 60 days' notice before Mr. Likes was laid off from his job at DHL's Birmingham delivery facility.  After careful review, and with the benefit of oral argument, we affirm.

## I.

Until 2009, DHL maintained a delivery network in the United States consisting of approximately 300 contractors that employed drivers who delivered packages for DHL.  DHL's agreements with these contractors—including the three companies working out of its Birmingham delivery facility, Sky Land Express, Territory Reps, Inc., and Wood Airfreight, Inc.—expressly did not prohibit the contractors from delivering packages for other companies.  However, DHL's former director of independent contractors could recall only two instances nationally where contractors actually delivered for another company.[2]  In any

---

[1] Mr. Likes is alternately referred to as "Darrius" Likes in the briefing and record in this case. Mr. Likes has informed the Court that the correct spelling of his first name is "Darriest," so we use that spelling here.

[2] These two instances involved contractors in remote locations:  the island of Saipan and Anchorage, Alaska.

event, each of the Birmingham facility contractors received 100 percent of their business from DHL.

In 2008, DHL began to phase out its U.S. domestic delivery program and entered into Termination and Transition Agreements ("TTA") with each of its contractors. In the TTA with Mr. Likes's employer,[3] contractor Wood Airfreight, DHL agreed to provide retention payments to the contractor's employees who worked until the TTA's termination date or until the contractor no longer needed the employee's services as delivery volume dropped. Mr. Likes was laid off in December 2008.

Mr. Likes filed this lawsuit as a class action, alleging that DHL violated the WARN Act by failing to provide 60 days' notice of impending layoffs. The district court denied Mr. Likes's request to certify the case as a class action, and we denied his petition for interlocutory review of that ruling. The district court then granted summary judgment to DHL. The court assumed, without deciding, that (1) neither res judicata nor collateral estoppel based on a previous lawsuit between the parties applied, and (2) Mr. Likes could show DHL was his employer. Even with those assumptions, the court held that Mr. Likes failed to demonstrate the existence of a genuine issue of material fact with respect to his WARN Act claim because he

---

[3] Mr. Likes moved this Court to supplement the appendix to his appeal with a copy of the TTA between DHL and Wood Airfreight. Because consideration of the terms of the TTA is relevant to this appeal, the motion is **GRANTED**.

could not show that 50 or more employees were laid off from a single work site. Mr. Likes appeals both the class action determination and the summary judgment ruling.

## II.

We review summary judgment decisions *de novo* and "draw all inferences and review all evidence in the light most favorable to the nonmoving party." *Airtran Airways, Inc. v. Elem*, 767 F.3d 1192, 1196 (11th Cir. 2014). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

## III.

The WARN Act requires that "[a]n employer shall not order a plant closing or mass layoff" without providing 60 days' notice to workers. 29 U.S.C. § 2102(a). The parties agree that DHL did not provide the requisite notice of termination. Thus, to establish a WARN Act claim, Mr. Likes must demonstrate

4

that he was (1) an employee of a qualified employer and (2) the subject of a mass layoff.

The WARN Act defines an "employer" as "any business enterprise that employs . . . 100 or more employees." *Id*. § 2101(a)(1). The Department of Labor's ("DOL") regulations implementing the WARN Act state that an independent contractor should be considered either a separate employer or a joint employer with a contracting company "depending upon the degree of their independence" from the contracting company. 20 C.F.R. § 639.3(a)(2). The regulations provide a list of five factors drawn from "existing legal rules" to help determine whether an independent contractor is truly independent or not: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations" between the independent contractor and contracting company. *Id*.

Wood Airfreight, Mr. Likes' direct employer, did not have 100 or more employees and therefore was not subject to WARN Act liability. Mr. Likes argues that DHL, which employed enough people to qualify as an "employer" for purposes of the WARN Act, was Mr. Likes' joint employer under the DOL regulations.

DHL argues that Mr. Likes is barred by collateral estoppel from arguing that DHL is his joint employer.  In 2008, Mr. Likes filed a separate lawsuit against DHL, alleging violations of the Fair Labor Standards Act ("FLSA").  In that case, the district court held that Mr. Likes could not show that DHL was his joint employer for purposes of FLSA liability.  *Darriest Likes v. DHL*, No. 2:08-cv-00428-AKK, ECF No. 112 at 25 (N.D. Ala. Mar. 7, 2012) [hereinafter *Likes I*].  DHL argues that the district court's holding in *Likes I* precludes Mr. Likes from arguing that DHL was his employer for purposes of liability under the WARN Act.[4]  Alternatively, DHL argues that Wood Airfreight was Mr. Likes's sole employer under the DOL regulations.

We need not decide whether collateral estoppel applies or whether DHL employed Mr. Likes because we agree with the district court that, even assuming DHL qualified as his employer, Mr. Likes cannot show he was the subject of a mass layoff under the WARN Act.

---

[4] DHL also argues that res judicata bars Mr. Likes's argument.  "In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases."  *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).  Because *Likes I* arose under FLSA and concerned back pay, while this case arises under the WARN Act and concerns notice of layoffs, these causes of action are not the same, and thus res judicata does not apply.

6

IV.

As relevant here, the WARN Act defines a mass layoff as a reduction in force that:

> (B) results in an employment loss at the single site of employment during any 30-day period for—
>
> > (i)(I) at least 33 percent of the employees (excluding any part-time employees); and
> >
> > (II) at least 50 employees (excluding any part-time employees)

29 U.S.C. § 2101(a)(3)(B).

It is undisputed that Wood Airfreight laid off fewer than 50 employees, so its reduction in work force alone cannot result in WARN Act liability. Mr. Likes argues that the DHL Birmingham facility was a "single site of employment" such that the layoffs from all three contractors that used the facility should be aggregated; together, the three companies laid off more than 50 employees.

DOL regulations explain that a "single site of employment can refer to either a single location or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1). "There may be several single sites of employment within a single building, such as an office building, if separate employers conduct activities within such a building." *Id*. § 639.3(i)(2). And "[c]ontiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment." *Id*. § 639.3(i)(5).

7

In holding that the Birmingham facility constituted multiple sites of employment, the district court relied on *International Union, United Mine Workers v. Jim Walter Resources*, 6 F.3d 722 (11th Cir. 1993), the only case in which we have interpreted 20 C.F.R. § 639.3(i).  In *Jim Walter,* we considered a plaintiff's ability to aggregate employees from separate work sites run by one employer in order to meet the WARN Act's threshold number of terminated employees.  The plaintiffs argued that they should be able to aggregate employees from several mines, three of which were geographically contiguous and two of which were connected underground.  6 F.3d at 725.  The employer often moved coal among the mines, but the mines did not share workers.  We reasoned that the proper focus of the single site analysis is on day-to-day management, administration, and personnel flow.  Relying on the DOL regulations, we held that the mines did not qualify as a single employment site because "the day-to-day management and employee structures at the four mines are fundamentally distinct."  *Id*. at 727.

Here, DHL's contractors worked out of the same Birmingham facility, but each had distinct "day-to-day management and employee structures." *Id*.  The evidence is undisputed that Wood Airfreight hired and fired its own employees, maintained its own personnel policies, rented its own delivery equipment, and ran its own payroll.  Mr. Likes has presented no evidence suggesting that employees moved between the different contractors at the Birmingham facility or that the

8

contractors shared day-to-day management.  To the contrary, the record shows that each contractor had its own administrative staff and payroll, made personnel decisions individually, and delivered packages to a distinct geographic area of Birmingham.  We thus conclude that the Birmingham facility was most similar to a situation where "[c]ontiguous buildings owned by the same employer . . . have separate management, produce different products, and have separate workforces," which the regulations "consider[] separate single sites of employment."  20 C.F.R. § 639.3(i)(5). Although they operated out of a common facility, the Birmingham contractors lacked the "operational connection" the DOL regulation deems necessary to constitute a single site of employment.  *Jim Walter*, 6 F.3d at 725 ("'The common thread in determining what is a single site would appear to be a sufficient degree of geographic contiguity as well as an operational connection.'" (quoting 9A Ind. Empl. Rights Man. (BNA) 595:954 (1988))).  Under *Jim Walter* and the DOL regulations, the contractors were too distinct from each other for the Birmingham facility to be a single site of employment, even if DHL was Mr. Likes's joint employer.

Because Mr. Likes has presented no evidence from which a reasonable jury could conclude that the Birmingham facility constituted a single site of employment, an element necessary for a WARN Act violation, we affirm the

district court's grant of summary judgment to DHL.  We therefore need not determine whether the district court properly denied class certification.

**AFFIRMED.**